## Richmond.

## BOWMAN v. LISKEY.

### November 19, 1908.

1. EQUITY—*Petitions—Complete Relief—Parties Not Prejudiced.*—Where a petition is filed in a chancery suit by the surety of a receiver therein against the receiver and one to whom he has illegally disposed of a part of the funds under his control, praying that they may be required to account for and pay to such person as the court shall direct the funds so illegally disposed of, if the issues between the parties are sharply drawn and they are afforded every opportunity to meet them that could have been afforded on an original bill, and depositions are taken and the parties fully heard, a proper decree based thereon will not be reversed, although the relief granted might have been afforded on an original bill. The parties are not prejudiced by the mode of procedure.

2. RECEIVERS—*Misappropriations—Crediting Private Debts.*—Where a receiver is authorized to sell a bond at a stated price for cash and assign it to the purchaser, if he receives a part of the price in his own obligations to the purchaser, or agrees that the purchaser shall pay it all in cash and that he will hand back a part of the money on account of his indebtedness to the purchaser, and this arrangement is carried out, the purchaser will be compelled to account to the court for the amount so received by him, or so paid by the receiver's obligations as aforesaid.

Appeal from a decree of the Circuit Court of Rockingham county. Proceeding on a petition. Decree for petitioner. Defendant appeals.

*Affirmed.*

*O. B. Roller & Martz* and *Conrad & Conrad,* for the appellant.

*Sipe & Harris,* for the appellees.

Cardwell, J., delivered the opinion of the court.

The question in this case involves the liability of a special receiver of the court and those dealing with him for the *devastavit* of funds under the control of the court.

It appears that in 1891 Andrew Bazzle sold a tract of land to the Harrisonburg Mineral and Development Company, at the price of $10,000, receiving in payment $500 cash, the residue being evidenced by deferred purchase money bonds secured by a vendor's lien on the land. Default being made by the company, Robert Liskey, the assignee of one of the deferred bonds for $1,000, due October 2, 1892, instituted a suit in chancery to enforce the vendor's lien securing the payment of the deferred purchase money bonds mentioned; and thereafter such proceedings were had that on the 23rd day of October, 1894, a decree was entered wherein Winfield Liggett and E. S. Conrad were appointed special commissioners to sell the land.

Granville Eastham, who was counsel for Liskey in the chancery suit, having died, he was succeeded by Liggett prior to the decree last mentioned, who on the 5th day of April, 1895, executed bond as special receiver in the sum of $8,000, in which the said Robert Liskey became his surety. Thereafter payments were made to Liggett as receiver, and subsequently the decree of sale was executed and Andrew Bazzle became the purchaser of the land, on the 10th day of March, 1901, at a sum sufficient to cover the then outstanding liens, paying $200 cash to the receiver, and executing three bonds, each in the sum of $1,400.

This sale was confirmed by decree entered in May, 1901, and the case was referred to a commissioner to settle the accounts of Liggett as special receiver, and to report to whom the funds were payable.

The commissioner, acting under this decree, on the 30th of October, 1901, filed his report, and on that day a decree was entered, reciting: "Winfield Liggett, the special receiver in this

cause, is directed to assign, without recourse, the bond executed by Andrew Bazzle for the first deferred payment for the sum of fourteen hundred dollars, with J. W. Bazzle as surety, bearing date March 10, 1901, and payable on or before March 2, 1902, with interest from date, to Winfield Liggett and Ed. S. Conrad, special commissioners, to any person who will cash the same for its face value and interest on the date of said assignment, and out of the money so realized from said assignment said special receiver shall pay off the liens reported in classes one and two of Commissioner Stephenson's report ✻ ✻ ✻. And it is further ordered that said special receiver, Liggett, do assign on like terms and conditions the bond executed by said Andrew Bazzle and J. W. Bazzle for the second deferred payment on the land to any person who will cash the same for its face value and interest; said bond bearing date March 10, 1901, and payable with interest on the 2nd day of March, 1903, and apply the same to the debts reported in class three of the report."

On the 10th of April, 1903, the cause was again referred to a commissioner, with direction to ascertain and report what funds there were in the cause, and how the same should be disbursed; and Liggett, being in default as receiver, as appears by a subsequent decree of May 25, 1904, was directed to turn over to the general receiver of the circuit court the Bazzle bonds not assigned by him, and to settle his accounts as such special receiver; Liggett at the same time resigning as receiver.

On August 1, 1904, Robert Liskey filed his petition in the cause, reciting, among other things, that portion of the decree of October 30, 1901, which authorized the assignment of the Bazzle bonds "to any person who will cash the same for its face value and interest to the date of said assignment," and charging that what purported to be an assignment of one of the bonds to one Jos. M. Bowman was made without Bowman having paid to Liggett the amount due in cash on the bond at the date of the assignment, and that the bond was delivered

to him without receiving the amount due thereon in cash, as Liggett was alone authorized to do under the decree. The petition further recited that the petitioner, Liskey, was not fully advised as to the details of the transaction between Bowman and Liggett, but charged that Bowman did not pay the cash on the assignment and delivery of the bond, etc. Reference was also made to the decree of April 10, 1903, which directed Liggett to settle his accounts as receiver before Commissioner Bryan, and that this account had not been reported; and the charge of the petition is that under the circumstances of the transaction and the facts connected with the alleged transfer of the bond to Bowman, Bowman is bound to account for and pay to such persons as the court may direct the amount due on the bond at the date of the assignment, with interest on the principal sum of $1,400 to date of payment, to the end that the fund in the cause might be properly received and applied to the parties entitled thereto; it being further alleged, that Liggett was insolvent, and that whatever liability there was upon him would doubtless have to be made good by the petitioner, Liskey. Bowman, Liggett, Ed. S. Conrad and Andrew Bazzle were made parties defendant to the petition, and the prayer is, "that all proper accounts may be ordered and taken on this petition; that your petitioner may have a decree requiring the said Joseph M. Bowman to account for and pay to such person as this court may direct the amount due on said bond for $1,400, with interest thereon from its date."

While Liggett never answered the petition or settled his account as receiver, he turned over to the general receiver, Sipe, the two unassigned bonds which had been in his hands, and therefore the controversy here relates only to the bond which he assigned to Bowman.

Liggett died on the 16th day of February, 1905, without making the settlement of his accounts required by the decree of court referred to, but his personal representative, J. Frank

Blackburn, appeared before Commissioner Bryan, and the account of Liggett was then settled, from which it appears that he was indebted to the fund, as of the 10th of June, 1905, in the sum of $1,810.15, of which $1,484 purported to have been received on March 10, 1902, from Bowman as the assignee of the first deferred purchase money bond of Andrew Bazzle. Out of this balance due by Ligget, there was payable to Reuben Armentrout $781.16, to Robert Liskey $773.36, and to Mrs. Miller a certain named sum.

The cause coming on again to be heard on the 18th day of May, 1905, upon Commissioner Bryan's report and the settlement of the accounts of Liggett made by Blackburn, his personal representative, the report was confirmed, and Robert Liskey, the surety of Liggett on his bond as special receiver, was authorized to pay off and discharge the liabilities due from his principal, Liggett being insolvent, and John T. Harris was appointed a special commissioner to convey the property to the purchaser as soon as Liskey should have discharged said liability, and Bazzle should have paid to Mrs. Miller the amount due her.

In the mean time, as already mentioned, and while Liggett was still living, on August 1, 1904, Liskey had filed his petition in the cause, and after Ligett's death Bowman answered the petition and averred that he paid in cash the face value and interest of the said bond to the date of the assignment of the same to him by Liggett. Mr. Conrad also filed his answer in the cause, in which he disclaimed any knowledge of the transactions, and denied any liability on account thereof, which seems clearly from the record to be the fact as to Mr. Conrad.

In September, 1905, a decree was entered, reciting that Liskey had discharged the liabilities resting upon him as surety of Liggett, and that Bazzle had paid off and discharged the debt to Mrs. Miller; that Harris had conveyed the property in accordance with the decree of May, 1905; and directing that Liskey be subrogated to all the rights of the general receiver

in the case, by reason of his having discharged for Liggett the recovery against him in the name of Sipe, receiver, and the cause was retired from the docket, but was at the same term of the court reinstated, for reasons satisfactory to the court; and thereafter, at the November term, 1905, the cause was again referred to a commissioner, with directions to ascertain whether Liggett, late receiver, had received cash for the face value and interest of the bond of $1,400 at the time the same was assigned by him to Bowman.

Before Commissioner Harnsberger, to whom the cause was referred, the depositions of Andrew Bazzle and Joseph M. Bowman were taken, and Commissioner Harnsberger then filed his report in the cause, in which he exonerated Bowman from any liability on account of his dealings with Liggett, receiver, as charged in the petition of Liskey. To this report Liskey excepted, on the ground that the evidence did not sustain the findings of the commissioner; and the cause coming on to be heard again on the 22nd day of April, 1907, the court sustained the exceptions of Liskey, to the extent of adjudging that Bowman was liable in the sum of $397.90, with interest thereon from the 2nd day of February, 1902; and directed a recovery in favor of Liskey for that amount. A decree to that effect was accordingly entered, and from that decree the case is before us on appeal.

The first, second, third and fifth assignments of error relate to the pleadings and decrees of the circuit court by which the default of Liggett as the late special receiver of the court was put in issue in this cause, the amount of his default ascertained, and the recovery authorized in favor of appellee; the complaint of appellant being that the proceedings were irregular, and that the relief decreed could only be granted upon original bill.

With respect to these assignments of error, we consider it only necessary to say: first, that the personal representative of Liggett voluntarily appeared before the commissioner of the court and rendered an account of the transactions of Liggett as

the late special receiver of the court in this cause, and he is not complaining of the report of the commissioner as to the amount of Liggett's default inquired into, or of the decree of the court establishing the amount of his liability; second, it is not made to appear in any way that the appellant was at all prejudiced by these proceedings and decrees. True, the relief thus afforded appellee, Liskey, as surety for Liggett, who it is admitted was in default, might have been obtained upon an original bill, but we are unable to see that the granting of the relief on the petition of appellee, Liskey, in this pending cause, instead of upon an original bill, was reversible error, if indeed error at all, since appellant does not point out how he was thereby prejudiced. The issue between him and appellee, as the surety for Liggett, was as sharply drawn on the petition filed by the latter in this cause as it would have been upon an original bill, and every opportunity afforded appellant to meet the issue that could have been afforded him upon an original bill filed against him touching the same matter.

The questions presented were: (1) Did Liggett, when he assigned the bond in question, under the decree of October 30, 1901, to Jos. M. Bowman (appellant), receive cash for the entire amount of said bond; (2) If not, what amount of said bond was not paid in cash; and (3) Is appellant liable for the amount of the bond not paid in cash?

It will be observed that the decree which authorized Liggett to assign the bond, provided only for an assignment thereof "to any person who will cash the same for its face value and the interest to the date of said assignment;" and the indorsement (without date) found on the bond when the obligor therein, Andrew Bazzle, paid the same in full to appellant, is as follows: "For value received, in pursuance of a decree rendered by the Circuit Court of Rockingham county, I assign this bond to Joseph M. Bowman, without recourse. Winfield Liggett, special receiver in *Robert Liskey* v. *Harrisonburg Mineral and Development Company.*"

In answer to the charge made in the petition of appellee, that appellant did not pay Liggett the face value of the bond in cash, he says that he did take up the bond "for cash" for its face value and interest to the date of the assignment, and the bond was assigned to him "by Ed. S. Conrad and Winfield Liggett, commissioners, without recourse;" but Ed. S. Conrad's name is not affixed to the assignment on the bond, and the record plainly shows that he had nothing whatever to do with the transaction. He does say in his answer to appellee's petition, that he was informed by both Liggett and appellant that the latter had paid the former the full amount of the principal and interest of the bond; yet he does not undertake to say, as doubtless he could not, that Liggett received in cash the entire amount of the bond, or that Liggett and appellant in their statements to him intended to be so understood.

Now, conceding the competency of appellant as a witness in his own behalf, what is his position? He states that Liggett came to his place about the 10th of February, 1902, and said "he had to have some money to pay his dues on his life insurance; that they were due and he had to have the money that day." That he (appellant) had about $400.00 in his pocket—that he expected to go to the mountains in a few days to purchase horses and Liggett knew it, but insisted on having the $400.00, and he got it "on the ground that it was to be applied on the note when I came up to Harrisonburg in a few days. I let him have $400.00 in money, cash, out of my pocket." "Q. Mow much money was to be paid on the assignment of this bond? A. Well, I was to pay him all of the interest that had accrued on it. He said he did not just know how much interest had accrued on it at that time. He couldn't tell until he got up town and saw the bond." Appellant then produced two checks to Liggett, both dated February 17, 1902, one for $200.00 and the other for $881.00, and stated as the reason for giving two checks that he did not have as much as the amount of both checks in bank, and therefore told Liggett to

hold up one of them until he (appellant) "sold some cattle or some stuff, and he agreed to hold that check a few days, which was dated ahead." On cross-examination, appellant repeated that Liggett told him that he (Liggett) had some insurance to pay, and claims that when Liggett figured up the interest it was found that the two checks and the $400.00 in cash amounted to more than what was due on the bond, and Liggett gave him back about $20.00.

Unfortunately for appellant, it clearly appears from his own admissions, not only that Liggett wanted the $400.00 to pay his life insurance dues, but that he was indebted to him, and that he at least expected Liggett to pay him this indebtedness out of the money he (appellant) was to pay for the bond, and dealt with Liggett with that end in view and paid no attention whatever to the authority to Liggett conferred by the decree under which he could alone act. He admits that Liggett was to take up some paper held by appellant—"Q. You did not give up to him any of his paper—any bonds or notes which you held against him? A. No, he promised to do that, but he said he would have to have all the money to make his settlement, he said, and then he would get about $400.00. I had taken up a note that Crawford was pressing him on for Mrs. Basore, and he said he would take it up, but he didn't do that."

These statements of appellant amount to no less than an admission, that when he paid to Liggett, the receiver, $400.00 on account of the face value and interest due on the bond which was to be assigned to him, if in fact he made that payment, the receiver was to receive the money in one hand and pay it, or part thereof, at least, with his other hand back to appellant in discharge or on account of the personal and private indebtedness of Liggett to him. The probative force of this evidence is not overcome by the fact that appellant retained in his possession the evidence of Liggett's indebtedness to him.

If any doubt existed that by his own showing appellant dealt with Liggett, the receiver, improperly as to the amount due on the bond assigned to him beyond the amount of the two checks

produced, it is removed by the testimony of Andrew Bazzle, a totally disinterested witness, examined on behalf of appellee. He says that before appellant took the assignment of the bond from Liggett he came to see witness about the bond, probably two or three weeks or more before he bought it, and asked if the bond was all right; and "I told him it was; that I thought I could pay it; I would pay it as soon as possible."

"Q. Did he make any statement to you then as to why he wanted to buy the bond? A. Well, I don't know whether it was then or when it was. It was probably, I think, before he did buy it, though I am not certain whether it was before he purchased it or after, he said to me Mr. Liggett owed him a little—a couple of hundred dollars—is my recollection of what he said, which he could get by taking up the bond  *  *  *  "

The witness further states that subsequently and after he had made the last payment to appellant on the bond, appellant told him "that it was more than that." While the witness was unable to recall that appellant told him the amount, he did recall the talks he had with appellant, and his statement is: "He (appellant) said it was more than two hundred dollars, more than he has first said. I do not remember that he said how much exactly it was."

"Q. What was more than two hundred dollars? A. That Mr. Liggett owed him; that he got off something over that amount; I don't know that there was any amount fixed.

"Q. What did he say he had gotten it off of? A. Well, he said Win. (Mr. Liggett) owed him, and he had taken it off the bond.

"Q. What bond? A. This bond he purchased.

"Q. Which bond that he purchased? A. For this bond I mean that he was taking from Win. Liggett.

"Q. Do you mean the bond of $1,400 referred to by you? A. Yes, sir."

The decree complained of allows appellant credit for the amount of the two checks given to Liggett and afterwards paid to him, as representing the true amount that actually went into

his hands as the receiver of the court on the purchase of the bond in question by appellant, authorizing a recovery against him for only the amount of the difference between the aggregate of the two checks and the amount due on the bond at the date of its assignment to appellant; and this ruling is not only justified by the evidence, but is in accordance with the only safe rule that can rightly be applied to such a case. Any other rule would encourage, if not authorize, fiduciaries generally, as well as officers of the courts, to make any disposition of trust funds they please, leaving their sureties to bear the loss without any relief whatever.

We think it needless to protract this opinion by a discussion of the cross-error assigned by appellee, to the effect that the court erred in not decreeing against appellant for the full amount due on the bond in question with interest. The right and justice of the case, as we view it, has been reached by the adjudication of the circuit court, the judgment of which is, under the well established rule in this court, entitled to great weight. To the extent that appellant proved that he had paid to Liggett in cash for the bond, Liggett then became responsible for the money, and his surety became responsible that he would account for and pay it out as the court might direct. It is not a case where a profit is made by a purchaser of fiduciary assets sold at a "ruinous discount," or where the purchase price was wholly paid in the obligations of the fiduciary, as in some of the cases cited for appellee, but a case where the authority to sell the bond was clear and explicit, but only a part of the purchase money therefor was misapplied with the knowledge of the purchaser of the bond.

The decree appealed from is affirmed.

*Affirmed.*